The Standard Commercial Tobacco Company, Inc., Petitioner, *v.* Tax Court of Puerto Rico, Respondent; Treasurer of Puerto Rico, Intervener.

No. 174. Argued May 3, 1948.—Decided June 9, 1948.

830

*E. T. Fiddler, José G. González, Tomás I. Nido,* and *Mariano Canales,* for petitioner. *Luis Negrón Fernández, Attorney General,* and *J. G. Fernández Badillo, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE SNYDER delivered the opinion of the Court.

Does the Tax Court have jurisdiction of a petition for mandamus filed by a taxpayer against the Treasurer if the petition is filed more than thirty days after the administrative decision of the Treasurer refusing to take the action requested by the taxpayer? In this case the Tax Court gave a negative answer. In *A. J. Tristani, Sucs., Inc., et al.* v. *Buscaglia,* No. R–39, the Tax Court gave the same answer and we denied certiorari in Cert. No. 121. We granted certiorari herein in order to re-examine the problem.

In its complaint in the Tax Court, filed on December 16, 1946, the petitioner alleged that on September 1, 1943 Axton Fisher Tobacco Company, Inc., its predecessor in interest, bought in San Juan 250,000 excise tax stamps for cigarettes, valued at 13¢ apiece, for $32,500. Axton Fisher then affixed these stamps to 250,000 packages of cigarettes which it had

received from continental United States on June 26, 1943. Thereafter, when examining the cigarettes in order to sell them in the local market, Axton Fisher discovered that the cigarettes had been completely spoiled by the sea while in transit to Puerto Rico.

On May 13, 1944 Axton Fisher transferred to the petitioner its title and interest in the cigarettes and stamps. On several occasions during 1944 and 1945 petitioner requested the Treasurer to witness the destruction of the cigarettes and to issue new stamps in lieu of the stamps which had been affixed to the damaged cigarettes. These requests were denied by the Treasurer. The last request by the petitioner was made by letter of July 11, 1945, which was denied by a letter of September 5, 1945 from the Treasurer. Relying on *Ligget & Myers Tobacco Co.* v. *Buscaglia, Treas.*, 64 P.R.R. 75, affirmed in *Buscaglia* v. *Ligget & Myers Tobacco Co.*, 149 F.(2) 493 (C.C.A. 1st, 1945), the petitioner prayed for a writ of mandamus directing the Treasurer to destroy these cigarettes and the stamps attached thereto and to issue to the petitioner in substitution therefor 250,000 new stamps valued at 13¢ apiece.

The Tax Court granted the motion of the Treasurer to dismiss the petition. It held that the petitioner was required to file his suit in the Tax Court within 30 days following the Treasurer's administrative decision, which was rendered on September 5, 1945. As the petition was not filed until December 16, 1946—more than fifteen months after the administrative decision of the Treasurer—the Tax Court held that it lacked jurisdiction.

■ This case is controlled by §§ 3 and 4 of Act No. 169, Laws of Puerto Rico, 1943, creating the Tax Court. Section 3 reads in part as follows:

"All actions, remedies, or proceedings which must be substantiated before the Tax Court of Puerto Rico shall be instituted by means of a sworn complaint of the claimant person or

entity, formulated by the claimant or through a duly authorized legal representative within the 30 days following the date of the service of notice thereof by the Treasurer of Puerto Rico, in any of the following cases: (1) Assessment or reassessment of personal property, tangible or intangible, or of real property; (2) Appraisal made for inheritance tax purposes, and proper liquidation of each heir's share of the inheritance, as well as the amount of the tax payable on each inheritance tax case; (3) Liquidation or re-liquidation of the amount of the income tax, including notices of deficiencies or of any other nature; (4) Refusals to return any tax improperly paid, or paid in excess, or otherwise unlawfully collected; (5) Request for payment by the Treasurer of Puerto Rico by virtue of any excise or license taxes, or any other tax or impost not previously specified . . .''

The first paragraph of § 4 provides as follows:

''The Tax Court shall have exclusive jurisdiction to take cognizance of all cases of revision of the assessment or reassessment of personal property, tangible or intangible, or of real property, and of all actions, proceedings, special or extraordinary remedies, and claims of any kind, relating to or affecting the levying, collection, payment, return, or reimbursement of all kinds of taxes, including excise and income taxes, the Victory Tax, inheritance and license taxes, and any other taxes or imposts, as well as to take cognizance of taxes improperly paid, or paid in excess, or unlawfully collected, the return of which may have been refused by the Treasurer. This jurisdiction, however, cannot be pleaded before the court by any person until there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto Rico, according to law.''

If this were an ordinary suit for refund of taxes, it would of course come under § 3(4), requiring suit within 30 days of the administrative decision. But we cannot agree with the Treasurer that this is simply a suit for refund of taxes. The Circuit Court in the *Ligget & Mayers* case says at p. 494: ''Such internal revenue stamps are not purchased as stamp collectors' items but to be used as evidence of the payment of taxes which Puerto Rico is lawfully empowered to impose. When the stamps so purchased are affixed and canceled before

the commodity is shipped to Puerto Rico . . . there has been in effect a prepayment of the tax. As might be expected, it has frequently happened that the commodity has been destroyed, or damaged so as to be rendered valueless, before any tax has accrued thereon; and hence the intended use of the canceled stamps as evidencing the payment of a tax lawfully due has been frustrated.

"In such cases, a decent thing for the insular government to do would be to issue to the shipper or importer internal revenue stamps of a face value equivalent to the canceled stamps."

If the petitioner had confined its request to a claim for refund of "a prepayment of the tax", the case would be a classical suit for refund. But, as the *Liggett & Myers* case makes clear, where the stamps have been attached to articles which have become useless before a taxable event has occurred, replacement of the stamps, which are only "evidence of the payment of taxes", involves a mere ministerial duty by the Treasurer and not the refund of taxes as such. The petitioner is therefore correct in its contention that this case is not covered by § 3(4), which applies only to suits for refund.

We also agree with the taxpayer that § 3, standing alone, does not include the instant case within its terms. Section 3 does not say without qualification that all actions shall be filed in the Tax Court within 30 days after the administrative decision of the Treasurer. Rather it provides that all actions shall be so filed *in any of the following cases*. It then lists five types of cases. And this petition for mandamus does not fall into any of these categories.

However, this case cannot be determined by the language of § 3 standing alone. That Section must be read together with § 4. Indeed, this case could never have been filed at all were it not for § 4: the jurisdiction of the Tax Court to issue mandamus stems from the provision of § 4 granting that

Court "exclusive jurisdiction . . . of . . . special or extra-ordinary remedies . . . relating to or affecting . . . all kinds of taxes . . . ".

Section 4 specifically provides that just as in other types of cases the jurisdiction of the Tax Court to grant an extraordinary remedy like mandamus may not be invoked "until there has been a proper administrative decision in the matter on the part of the Treasurer of Puerto Rico, according to law." Act No. 169 is a complicated statute which attempts to cover a number of situations. Each of its Sections does not stand alone. The statute must be read as a whole if we are to gather the intention of the Legislature in framing particular provisions thereof. In § 4 the Legislature for the first time vested the Tax Court with exclusive jurisdiction to grant special remedies. But it indicated that these extraordinary remedies could be granted only within the framework of the other procedural requirements of Act No. 169: it provided in § 4 that all remedies, including the special or extraordinary, must be preceded by administrative decision. In so providing, we believe the Legislature meant for §§ 3 and 4 to be read together so that even in those cases not specifically listed in the five paragraphs of § 3, including special remedy cases, suit must be filed in the Tax Court within 30 days after the administrative decision of the Treasurer.

To hold otherwise would be to find that the Legislature placed a time limit on ordinary, but not on extraordinary, remedies. We see no difference between the two types of cases so far as the necessity for finality of the Treasurer's decisions is concerned. It is difficult to believe that the Legislature required an administrative decision of the Treasurer to invoke the jurisdiction of the Tax Court in both types of cases, and yet as to the special remedies meant to place no time limit after the administrative decision within which the taxpayer was required to proceed in the Tax Court. A specific provision to this effect in § 4 would have made this

case easier to decide. Nevertheless, we reach the same conclusion when §§ 3 and 4 are read together against the background of Act No. 169 as a whole.

In view of the result we have reached, we find it unnecessary to consider the remaining questions raised by this case.[1]

The decision of the Tax Court will be affirmed.

Mr. Justice De Jesús did not participate herein.

---

[1] The Treasurer also contends (a) that under Act No. 137, Laws of Puerto Rico, 1945, the petitioner must allege and prove that it and not Axton Fisher suffered the burden of paying the tax; (b) that a taxable event occurred herein; i.e., introduction into Puerto Rico; and (c) the same argument as (b) except that the taxable event was the transfer of title to the cigarettes by Axton Fisher to the petitioner. In addition, even if the 30 day limitation did not apply, the question of laches must always be considered in a petition for mandamus.